**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALI S. MORGANO, : | |
| : | Civil Action No. 08-1524 (PGS) |
| Petitioner, : | |
| : | |
| v. : | O P I N I O N |
| : | |
| MICHELLE R. RICCI, et al., : | |
| : | |
| Respondents. : | |

**APPEARANCES:**

Ali S. Morgano, Pro Se
#218584
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Debra Grace Simms
Office of the Essex County Prosecutor
50 West Market Street
Newark, NJ
Attorney for Respondents

**SHERIDAN, District Judge**

　　Petitioner Ali S. Morgano, a prisoner currently confined at the New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Administrator Michelle Ricci and the Attorney General of New Jersey.

　　For the reasons stated herein, the petition must be denied.

**BACKGROUND**

**A.   Factual Background**

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division ("Appellate Division").[1]

> . . . On June 6, 1988, at about 2:00 p.m., Mohamed Rachid and Ikab Salamah were in the area of Sixth Avenue and North Ninth Street, Newark, selling pictures out of Salamah's van.  While Rachid was inside the truck getting some pictures to give to Salamah, he heard one shot followed a few seconds later by another one.  Salamah yelled for Rachid.  Upon hearing Salamah's scream, Rachid ran to the back of the truck and saw Salamah struggling with an armed man.  When the gunman saw Rachid, he pointed the gun at Rachid. Rachid backed up, fell down, and crawled to the front of the truck.  When Rachid looked out the rear of the truck, he saw the gunman, later identified as Sean Jones, take money from Salamah's pocket and run away. Salamah died from the two bullet wounds.
>
>     The shooting was also witnessed by Cheryl Johnson while she was buying pictures from Salamah and Rachid. She heard the sound of a gun and looked up to see Salamah and "Sue" (Sean Jones) struggling.  Johnson saw Jones shoot Salamah a second time and saw Jones turn around with the gun in his hands and point it at Rachid.  Johnson then saw Jones run to defendant's car with money in his hands and get into the car.  Johnson noticed that Jones dropped some money in the street and she picked up about three dollars.  Defendant demanded the money from Johnson and she turned it over to him. Defendant then went to his car, where Jones was waiting, and the two men drove off together.  Johnson

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

was interviewed by the police on June 18, 1988, and identified defendant as the man who demanded the money and drove the getaway car. The police then made efforts to locate defendant.

On the morning of June 22, 1988, however, defendant turned himself in to the Newark Homicide Squad and gave a voluntary statement to Detective Martinez of the Essex County Prosecutor's Office. In his statement, defendant claimed that he had been alone in the Hawk's Bar around the corner from where the shooting occurred. He heard two shots while he was inside the bar and he went outside with some other people to see what had happened. As defendant stepped outside, "Sue" Jones ran toward defendant and asked defendant to take him to 32 South Munn Avenue in East Orange. Defendant claimed that he did not see that Sean Jones was carrying a gun until Jones was getting out of defendant's car. Defendant also stated that about four days later, Jones admitted to him that Jones shot someone, but he did not mean to kill the man. Defendant admitted that he drove his father's car, a while 1979 Cadillac, on the date of the incident. In his first statement, defendant denied any involvement in the shooting.

Later the same day, on June 22, Detective Eutsey of Newark Police Homicide Squad, interviewed defendant a second time. Eutsey had taken Cheryl Johnson's statement on June 18 and had just completed an interview with Sean Jones.[] Eutsey explained to defendant that he "had other facts" of which Detective Martinez was not aware and asked defendant to give "another statement as to what really happened." Defendant agreed.

In his second statement, defendant said that on June 6, 1988, he pulled up on Sixth Avenue, got out of his car and saw Sean Jones, who told him that there was a man selling pictures who had a lot of money and Jones wanted to rob the man. Defendant told Jones that he did not want any part of the robbery but agreed to take Jones to get a gun. Defendant drove Jones to defendant's mother's house at 849 Clinton Avenue. Defendant stayed in the car while Jones went to the backyard and got the gun. Defendant drove Jones back to Sixth Avenue and dropped him off, again stating that he wanted no part in the robbery. Defendant claimed he

3

>  then went to Hawk's Bar and heard gunshots while sitting inside. When he came out of the bar, Jones ran toward him and asked defendant to take him to defendant's house. Defendant obliged but returned to the scene at Jones' request to see what was going on. When he returned to the scene, defendant learned that the victim was dead. After defendant told Jones the victim had died, Jones offered defendant $1,500 as "hush" money. Defendant acknowledged that as Jones ran toward his car following the shooting, Jones dropped some money and defendant saw Cheryl Johnson pick it up. Defendant admitted that he asked Johnson to give him the money, which she did.
>
>  On October 6, 1999, eleven years after defendant's conviction and sentencing, Jones was interviewed in Trenton State Prison by a private investigator [recanting his June 1988 statement, and said that he made a mistake in implicating defendant.]

See Respondents' Appendix ("RA") 17 at pp. 7-11 (internal footnote omitted).

**B.   Procedural History**

On October 18, 1988, an Essex County Grand Jury returned an indictment charging Petitioner with six counts of violating New Jersey state law: second-degree conspiracy to commit robbery; first-degree robbery; felony murder; knowing and purposeful murder; unlawful possession of a weapon; possession of a weapon for an unlawful purpose. Petitioner pled not guilty to this indictment.

Petitioner was tried on March 16, 1989, and was convicted of all counts. On April 5, 1989, Petitioner was sentenced to an aggregate term of imprisonment of life, with 30 years parole ineligibility.

4

Petitioner appealed his convictions and sentences to the Superior Court of New Jersey, Appellate Division ("Appellate Division"), which affirmed. The New Jersey Supreme Court denied Petitioner's petition for certification on June 27, 1991.

Petitioner filed a state court petition for post-conviction relief (PCR) which was denied; the denial being affirmed on appeal on or about March 17, 1994. In May 1995, Petitioner filed another motion for post-conviction relief, which was denied. The Appellate Division affirmed the denial on December 19, 1997.

On August 24, 2000, the trial court heard Petitioner's motion for a new trial; wherein Petitioner alleged that he obtained newly discovered evidence, namely an exculpatory statement by his co-defendant, Sean Jones. The trial court ruled against the application. The Appellate Division affirmed the denial on June 4, 2002.

Petitioner then filed a motion to compel discovery in the Law Division. The motion to compel, filed with another motion for a new trial based on the newly discovered evidence, was denied by the Law Division in February of 2007. A motion for reconsideration of the denial was denied on May 31, 2007. Petitioner appealed the decisions and affirmed the denials. Petitioner's motion to the New Jersey Supreme Court for certification was denied on September 3, 2008.

This petition was filed on March 27, 2008. Petitioner was informed of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), and respondents were ordered to answer the petition. Respondents' answer was filed on August 22, 2008. Petitioner filed numerous motions in this litigation, one of which remains pending, see Motion for Discovery, Motion for leave to proceed in forma pauperis (docket entry 33).

**C.    Petitioner's Claims**

Petitioner alleges the following grounds for relief in this habeas petition:

(1) The post conviction relief court erroneously denied the defendant's Brady claims based on a mis-interpretation of the facts.

(2) It was a miscarriage of justice for state prosecutor to appear at key witness Cheryl Johnson plea hearing and recommend a lenient plea bargain after vowing that witness was receiving no preferential treatment in return for her testimony against defendant.

(3) The State knowingly allowed key State witness, Ms. Cheryl Johnson, false testimony to go uncorrected in order to obtain the conviction denying defendant of the fundamental right to a fair trial.

(4) The post conviction court should have reversed the defendant's conviction based on the newly discovered

>    evidence of State's key witness Ms. Cheryl Johnson's psychological medical reports.
> (5) The post conviction relief court erroneously denied appellant's reconsideration application.
> (6)[2] The Appellate Division should have reversed defendant's reconsideration application.
> (7) The Appellate Court err[ed] in granting respondent's motion for summary disposition of defendant's appeal.

(Petition, ¶ 12). It appears that the claims have been exhausted in the state courts. Nonetheless, this Court finds that Petitioner's claims are clearly meritless. Thus, the petition will be denied.[3]

## DISCUSSION

**A.   Standards Governing Petitioner's Claims.**

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

---

[2] It appears that Petitioner skipped "Ground Six", so the sixth claim is actually labeled "Ground Seven."

[3] Although a petition for writ of habeas corpus may not be granted if Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding Petitioner's failure to exhaust his state court remedies. See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an

"unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. See id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any

9

supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**B.     Petitioner's Claims Regarding Testimony of State's Key Witness, Cheryl Johnson (Grounds 1, 2, 3, 4).**

In Ground 1, Petitioner argues that the post-conviction relief court erroneously denied his Brady claims based on a misinterpretation of facts. Petitioner's reference to Brady v. Maryland, 373 U.S. 83 (1963)[4], infers that his claim is that the State did not provide records of the plea offer regarding Johnson. He argues that the "p[ost-]c[onviction] r[elief] judge misinterpreted the facts by stating that the trial jury was made

---

[4] In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." See also Giglio v. United States, 405 U.S. 150, 154 (1972) ("A finding of materiality of the evidence is required under Brady."); United States v. Bagley, 473 U.S. 667, 682 (1985) (in which the Supreme Court held that, regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"). For Brady purposes, there is no distinction between exculpatory and impeachment evidence. See Kyles v. Whitley, 514 U.S. 419, 433 (1995) (citations omitted).

10

aware [Johnson's] plea deal and favorable treatment in her plea and sentencing transcripts."

However, it is clear from the record in this case that Johnson's plea agreement was not provided to Petitioner during trial discovery because the plea occurred after Petitioner's trial.

In Ground 2, Petitioner argues that the trial prosecutor told the jury that Johnson would not receive any special treatment in return for her cooperation; however, he appeared at Johnson's plea proceedings and recommended a sentence.

This claim has no merit, as the decision whether or not to offer a plea to a defendant is in the discretion of the prosecutor. It can be assumed that Johnson's plea, based upon the New Jersey court rules, contained an adequate factual basis, was given voluntarily, and was given with an understanding of the nature of the charges, and consequences. The terms of the plea were, presumably, reviewed by a court. Whether or not Johnson's plea was more lenient than other similar pleas is subjective, and of no concern in this habeas matter.

Furthermore, Petitioner's allegation that the prosecutor misled the jury by stating that Johnson did not receive favorable treatment in her criminal case due to her testimony also has no merit, because Petitioner has not demonstrated that his trial was fundamentally unfair. See Keller v. Larkins, 251 F.3d 408, 413

11

(3d Cir.), cert. denied, 534 U.S. 973 (2001) (finding that for a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial).  Nor does Petitioner demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

In Ground 3, Petitioner argues that Johnson testified during the trial that she was not receiving preferential treatment from the State for her testimony, which was false, and which denied Petitioner the fundamental right to a fair trial.

The record reflects that Petitioner raised this claim in a motion for a new trial, twelve years after his judgment of conviction, to the Appellate Division, which declined to hear the issue.  (Ra17).  Then Petitioner brought the issue on PCR motion, relying on transcripts of Johnson's arraignment and pre-sentence report to assert that Johnson committed perjury implicating him, in exchange for a lesser sentence for her own charges.  In addition, Petitioner's counsel argued to the jury that Johnson was using her testimony to receive favorable treatment in her own

prosecution. As noted by the state court judge deciding the motion for a new trial:

> Defendant's attorney . . . an experienced and capable defense attorney, made the argument in open court before the jury that Cheryl Johnson was attempting to curry favor with the State by testifying against Ali Morgano. The jurors knew of Cheryl Johnson's charges and plea arrangement. Accordingly, the jurors were aware of and had the opportunity to take Cheryl Johnson's charges and plea into account in assessing the credibility of her testimony.

(Ra 19, at p. 6).

Therefore, as this was presented to the jury, who still convicted Petitioner, it is clear that no fundamental injustice occurred; rather, the jury assessed Johnson's credibility, to the detriment of Petitioner.

In Ground 4, Petitioner argues that the PCR court should have reversed Petitioner's conviction based upon newly-discovered evidence of Johnson's psychological medical reports. Petitioner states that evidence in the pre-sentencing report indicated that Johnson suffered from "attention span deficit disorder," and that if the jury knew this, they would have discredited her testimony at trial.

This matter was also addressed by the state courts in the motion for a new trial. As noted by the state courts, the pre-sentence report does not constitute a finding of medical fact, and was based on the self-reporting of Johnson to the probation officer who compiled the report. Further, "even if Cheryl

13

Johnson had A.D.D., there is nothing offered but speculation that her ability to perceive the events she testified to witnessing was impaired.  Attention Deficit Disorder alone is not determinative of a witness' ability to observe, perceive and testify to witnessing a crime."  (Ra19 at pp. 6-7).

Thus, Petitioner has not demonstrated that his trial was fundamentally unfair due to his being unaware of Johnson's self-reported A.D.D. diagnosis.  Nor does Petitioner demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

C.  **Claims Regarding PCR Proceedings and Appellate Rulings (Grounds 5, 7, 8)**

Petitioner claims in Ground 5 of his petition that the PCR court erroneously denied his reconsideration application based on newly-discovered evidence of Johnson's promised favorable plea deal.  In Ground 7, he argues that the Appellate Division should have reversed the denial of his reconsideration application based on the newly-discovered evidence.  In Ground 8, Petitioner argues that the New Jersey Supreme Court should have granted him certification to review these issues.

Petitioner's claims regarding his PCR hearing must be denied because it has long been established that habeas corpus relief is intended only to address claims attacking underlying state convictions, not matters collateral to those convictions. See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998), cert. denied, 526 U.S. 1065 (1999). In Hassine, the Third Circuit held that "[t]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation." Id.; see also Lambert v. Blackwell, 2003 WL 1718511 at *35 (E.D. Pa. Apr. 1, 2003)("Lambert's claims of errors by the [post-conviction relief] court fail to assert viable federal habeas claims," citing Hassine, 160 F.3d at 954); Rollins v. Snyder, 2002 WL 226618 at *5 (D. Del. Feb. 13, 2002)("Rollins' claims based on the Delaware courts' actions in his [post conviction proceedings] are not cognizable on federal habeas review"). Unless state collateral review violates some independent constitutional right, such as the Equal Protection Clause, infirmities in state habeas proceedings are not cognizable under § 2254 and do not warrant federal habeas relief. See, e.g., Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir.), cert. denied, 121 S. Ct. 477 (2001); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997), cert. denied,

15

525 U.S. 903 (1998); Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir.), cert. denied, 513 U.S. 983 (1994); Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993); Bryant v. Maryland, 848 F.2d 492, 492 (4th Cir. 1988); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987); Kirby v. Dutton, 794 F.2d 245, 247 (6th Cir. 1986).

Furthermore, Petitioner's claims have been presented through the State courts. This Court does not sit in judgment of the state courts decisions, except to review whether the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). After a review of the record and arguments presented by Petitioner, this Court does not find that the state courts decisions were contrary to federal law, or were based on unreasonable determinations of facts in light of the evidence presented. Therefore, his claims must be denied.[5]

---

[5] Given the disposition of this case, Petitioner's Motion for Discovery and to proceed in forma pauperis will be dismissed (docket entry 33). Petitioner's request to proceed IFP was previously granted on May 20, 2008 (docket entry 2).

16

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

February 18, 2010